Brent D. Wride (5163)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
Salt Lake City, UT  84111
Telephone: 801-532-1500
Facsimile:  801-532-7543
E-mail:  bwride@rqn.com
*Attorneys for Appellants, the Chapter 11 Trustee and Aquila, Inc.*

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>C. W. MINING COMPANY, a Utah corporation,<br><br>Debtor.<br><br>―――――――――――――――――<br><br>GARY E. JUBBER, Chapter 11 Trustee,<br><br>     v.<br><br>DEFENDANTS RE HIAWATHA COAL PROCEEDS, | District Court No. 2:14-cv-500<br><br>Bankruptcy Case No. 08-20105<br>Adversary Proceeding No. 11-08001<br><br>**BRIEF OF APPELLANTS**<br><br>[Filed Electronically] |

# **TABLE OF CONTENTS**

**STATEMENT OF THE ISSUES** ............................................................................................... 1

**STATEMENT OF THE CASE** .................................................................................................. 2

    *Nature of the Case* ............................................................................................................. 2

    *Course of Proceedings and Disposition in Court Below* .................................................. 2

    *Statement of Facts* ............................................................................................................. 3

**ARGUMENT** .............................................................................................................................. 5

**I.**    **ON REMAND THE BANKRUPTCY COURT ERRED IN RULING THAT THIS COURT "DID NOT REVERSE ANY DECISION" OF THE BANKRUPTCY COURT.** ............................................................................................. 6

**II.**   **THE BANKRUPTCY COURT ALSO ERRED IN RULING THAT THIS COURT "DID NOT CONCLUDE THAT THE COAL IN SITU WAS PROPERTY OF THE ESTATE."** ............................................................................. 6

**III.**  **THE BANKRUPTCY COURT ERRED IN RULING THAT ALL POTENTIAL REMEDIES FOR THE TRUSTEE ARE BARRED BY SECTION 550.** .................................................................................................................. 10

**CONCLUSION** ........................................................................................................................ 11

**STATEMENT OF RELATED CASES** .................................................................................. 13

## **TABLE OF AUTHORITIES**

**Cases**

*Benton v. Utah*, 708 P.2d 362 (Utah 1983) ................................................................................... 7

*In re Ruiz,* 455 B.R. 745 (10th Cir. BAP 2011) ............................................................................. 8

*In re: Osborne,* 24 F.3d 1199 (10th Cir. 1994) ........................................................................... 1, 2

*Kennedy v. Combined Metals Reduction Co.*, 52 P.2d 1064 (Utah 1935) ..................................... 7

**Statutes**

11 U.S.C. § 550(a) ................................................................................................................. 10, 11

## STATEMENT OF THE ISSUES

***Issue #1***: After this Court "affirm[ed] in part and reverse[d] in part the bankruptcy court's decision," did the bankruptcy court err on remand by holding that "[t]he District Court did not reverse any decision of this Court"?

*Standard of Review*: The bankruptcy court made its decision on remand based upon a motion for summary judgment. The standard of review for an order granting summary judgment is de novo. *In re: Osborne,* 24 F.3d 1199, 1203 (10th Cir. 1994).

*Preservation of Issue*: This issue was preserved in numerous pleadings and hearings, including, for example, Aquila's Memorandum Regarding Whether the Issues on Remand Can Be Addressed by Summary Judgment at this Stage of the Proceedings. (App. 68-71.)[1]

***Issue #2***: After this Court held that the bankruptcy estate had "a property interest recognized by § 541" in certain coal, did the bankruptcy court err on remand by failing to abide by this ruling and by holding that the estate's property interest was simply a contract right to mine coal?

*Standard of Review*: The standard of review for an order granting summary judgment is de novo. *In re: Osborne,* 24 F.3d 1199, 1203 (10th Cir. 1994).

*Preservation of Issue*: This issue was preserved in numerous pleadings and hearings, including, for example, Aquila's Memorandum Regarding Whether the Issues on Remand Can Be Addressed by Summary Judgment at this Stage of the Proceedings. (App. 68-71.)

---

[1] All references to the record are to the Appellants' Appendix, which is filed herewith and which is referred to as "App."

1

*Issue #3*:  Did the bankruptcy court err in holding that because the Trustee recovered possession of the coal mine, he was precluded from recovering the value of coal that was severed from the coal mine?

*Standard of Review*:  The standard of review for an order granting summary judgment is de novo.  *In re: Osborne,* 24 F.3d 1199, 1203 (10th Cir. 1994).

*Preservation of Issue*:  This issue was preserved in numerous pleadings and hearings, including, for example, in the Trustee's Combined Reply Memorandum.  (App. 407-410.)

## STATEMENT OF THE CASE

### Nature of the Case

This appeal arises from the bankruptcy of C. W. Mining Company ("**CWM**" or the "**Debtor**").  CWM operated a coal mine in Emery County, Utah (the "**Coal Mine**").  The question on appeal is whether the bankruptcy estate had a property interest in coal that was taken from the Coal Mine after the bankruptcy petition was filed (the "**Severed Coal**").

### Course of Proceedings and Disposition in Court Below

The Chapter 7 Trustee[2] filed a number of adversary proceedings in the bankruptcy court seeking to recover the Severed Coal or its value.  On February 22, 2011, the bankruptcy court entered an order consolidating for hearing the various adversary proceedings that were related to the Severed Coal.  An amended order consolidating the various cases was entered on September 11, 2013.  (App. 72-78.)  The consolidated adversary proceeding (Adversary No. 11-08001) is the subject of this appeal.

---

[2] The Chapter 7 Trustee was Kenneth A. Rushton.  The current trustee (the "**Trustee**" or the "**Chapter 11 Trustee**" is Gary E. Jubber.

2

The parties filed cross motions for summary judgment in the consolidated adversary proceeding. Certain parties that had purchased the Severed Coal (the "**Coal Purchasers**"), as well as parties related to the Debtor, argued that the Severed Coal was not property of the CWM bankruptcy estate and had never been property of the estate. On July 29, 2011, the bankruptcy court entered an order granting summary judgment against the Chapter 7 Trustee and finding that, as a matter of law, neither the Severed Coal nor its proceeds were ever property of CWM.

The Chapter 7 Trustee then filed the first appeal to this Court. (App. 46-52.) This Court, Judge Stewart presiding, affirmed the portion of the bankruptcy court's decision holding that CWM did not have *title* to the Severed Coal.[3] (App. 61.) However this Court specifically reversed the decision of the bankruptcy court that the estate "held no property interest in the [Severed Coal] for purposes of § 541." (App. 67.) This Court then remanded the case to the bankruptcy court.

On remand, and based upon the very same record, the bankruptcy court once again granted summary judgment against the Chapter 7 Trustee, ruling that "[t]he District Court did not reverse any decision of this Court and did not conclude that the [Severed Coal] was property of the estate." (App. 482.) Aquila and the Chapter 11 Trustee then filed this second appeal. (App. 504.)

*Statement of Facts*

The facts are succinctly and cogently set forth in this Court's Memorandum Decision and Order on Combined Appeal, as follows:.

---

[3] This holding is not disputed and is not at issue in this second appeal.

3

1.     On January 8, 2008, Aquila, Inc. ("**Aquila**") and two other creditors filed an involuntary Chapter 11 petition against CWM in the Bankruptcy Court for the District of Utah. (App. 55.)

2.     An Order for Relief was entered on September 26, 2008. *Id.*

3.     One of the assets of the debtor was a coal operating agreement (the "**Operating Agreement**") that granted CWM the exclusive right to mine coal from the Bear Canyon Mine (the "**Coal Mine**"). *Id.*

4.     After the bankruptcy petition was filed, CWM purported to sell all of its assets, equipment, personal property and other movable assets, as well physical possession of the coal mine to a related corporation, Hiawatha Coal Company ("**Hiawatha**"). *Id.*

5.     This alleged sale occurred during the "gap period"—after the filing of the involuntary bankruptcy petition but prior to the entry of the order for relief. *Id.*

6.     This sale was subsequently avoided by the bankruptcy court under 11 U.S.C. § 549. *Id.*

7.     After taking possession of the Coal Mine, Hiawatha severed and removed over 1,019,000 tons of coal (the "**Severed Coal**"), delivering most of the Severed Coal to third parties (the "**Coal Purchasers**"). (App. 55-56.)

8.     The Coal Purchasers paid Standard Industries, Inc. ("**Standard**")—which was another corporation related to CWM—for the Severed Coal they purchased. (App. 56.)

9.     As stated above, after CWM was placed into bankruptcy, the Chapter 7 Trustee filed a number of recovery actions against various parties, including Hiawatha, Standard, and the Coal Purchasers. A common issue in these numerous actions was consolidated into the

4

consolidated adversary proceeding that is now before this Court on appeal (Adversary Proceeding No. 11-08001).  (App. 72.)

10. On July 29, 2011, the bankruptcy court entered an order granting summary judgment against the Chapter 7 Trustee and finding that, as a matter of law, neither the Severed Coal nor its proceeds were ever property of CWM.  (App. 56.)

11. On appeal, this Court (Judge Stewart) affirmed the portion of the decision of the bankruptcy court finding that CWM did not have *title* to the Severed Coal.  (App. 61.)  However this Court specifically reversed the decision of the bankruptcy court that the estate "held no property interest in the [Severed Coal] for purposes of § 541."  (App. 67.)  This Court then remanded the case to the bankruptcy court.  *Id.*

12. On remand, and based upon the very same record, the bankruptcy court once again granted summary judgment against the Chapter 7 Trustee as a matter of law.  (App. 469, 499.)

13. Aquila and the Chapter 11 Trustee filed a timely notice of appeal on July 7, 2014. (App. 504.)

## ARGUMENT

This Court affirmed the bankruptcy court's ruling that CWM did not have *title* to the coal in situ.  This issue is settled, and it is not disputed in any way by Aquila or the Trustee in this appeal.  However, this Court made clear that a finding regarding *title* to the coal "is not determinative of the issue of whether" CWM had "*any* property interest in the Severed Coal for purposes of § 541(a)."  (App. 61, emphasis added.)  This Court then went on to find that CWM did hold a "property interest for purposes of § 541 in the coal in situ."  (App. 67.)

5

Because it has been conclusively determined that CWM had a property interest in the Severed Coal, the bankruptcy court erred by once again granting summary judgment against the Trustee. As shown below, the bankruptcy court also erred in holding that by recovering physical possession of the Coal Mine the Trustee elected his remedy and was not entitled to recover the value of the estate's property interest in the Severed Coal, which is a separate asset.

I. **ON REMAND THE BANKRUPTCY COURT ERRED IN RULING THAT THIS COURT "DID NOT REVERSE ANY DECISION" OF THE BANKRUPTCY COURT.**

On remand the bankruptcy court stated:

> The Trustee blatantly distorts the District Court's Remand Order. The District Court did not reverse *any* decision of this Court and did not conclude that the coal in situ was property of the estate.

(App. 482, emphasis added). This is simply incorrect. This Court could not have been more plain. Judge Stewart stated that the decision of the bankruptcy court was—in the precise words of this Court—"reverse[d] in part." (App. 55.) Judge Steward later reiterated his ruling by stating: "[T]he judgment of the bankruptcy court is AFFIRMED *except* as to its determination that CWM, at the time of filing of the involuntary petition, held no property interest in the coal in situ for purpose of 541." (App. 67, emphasis added).

II. **THE BANKRUPTCY COURT ALSO ERRED IN RULING THAT THIS COURT "DID NOT CONCLUDE THAT THE COAL IN SITU WAS PROPERTY OF THE ESTATE."**

The bankruptcy court held that this Court "did not conclude that the coal in situ was property of the estate." (App. 482.) This holding does not give a proper interpretation to the decision of this Court. It is true that this Court ruled that the estate did not have *title* to the Severed Coal. But this Court then held: "That being said, a finding that CWM did not have

6

title to the coal is not determinative of the issue of whether CWM had *any property interest* in the Severed Coal for purposes of § 541(a) at the time the bankruptcy petition was filed." (App. 61-62, emphasis added.)  This Court stated that the bankruptcy court had recognized that CWM's contractual right to mine the coal was property of the estate, and that under *Benton v. Utah*, 708 P.2d 362 (Utah 1983), that contractual right gives the holder an incorporeal hereditament.  However, this Court noted that the bankruptcy court had not decided whether such an incorporeal hereditament is a property interest under section 541.  In other words, this Court recognized an issue that the bankruptcy court had not addressed, namely whether the incorporeal hereditament is more than simply a contract right but actually an interest in the property itself.  Recognizing that the bankruptcy court believed that the estate had only a contractual right, this Court then went on to analyze and rule on this particular issue.

      This Court stated that "Utah courts have recognized an incorporeal hereditament as an *interest in real property*."  (App. 62, emphasis added.)  Specifically, the Court relied upon *Kennedy v. Combined Metals Reduction Co.*, 52 P.2d 1064, 1068 (Utah 1935), in which the Utah Supreme Court discussed the potential for a mining license to ripen into an incorporeal hereditament.  This Court stated that *Kennedy* "supported a conclusion that the holder of an incorporeal hereditament would be considered the holder of a form of property interest entitling it to compensation under Utah law."  (App. 63.)  Turning to the present case, this Court stated that the Chapter 7 Trustee had come forward with evidence demonstrating that CWM expended over $14 million in preparing to extract to the Severed Coal.  (App. 64.)  This Court then concluded this particular portion of its analysis by making an express finding that "prior to the filing of the bankruptcy petition and the removal of the Severed Coal, CWM held, under Utah law, an incorporeal hereditament or intangible *property interest* in the Severed

7

Coal." (App. 65, emphasis added.) Thus, this Court found that CWM had a property interest in the Severed Coal, and not simply a contractual right to mine coal. This Court's holding is binding on the parties and the bankruptcy court.

The remaining question that this Court addressed in the first appeal was whether the Debtor's incorporeal hereditament would be recognized as property of the estate under section 541 of the Bankruptcy Code. Given the very broad reach of section 541, this Court found that "CWM's incorporeal hereditament is a property interest recognized by § 541." (App. 66.) Again, the Court's language is plain and unambiguous—CWM had, in the precise words of this Court "a property interest" in the Severed Coal, and not just a contractual right to mine the coal as the bankruptcy court held. *See In re Ruiz,* 455 B.R. 745, 748-49 (10th Cir. BAP 2011) (funds in a bank account constituted property of the estate; property of the estate consisted of more than simply a mere promise or contract to pay over the funds)

This Court's determination that CWM had a property interest in the Severed Coal is binding and dispositive. Although the bankruptcy court issued a detailed ruling on remand, this ruling was irrelevant and unnecessary. The matter had already been conclusively decided by this Court. Even if the bankruptcy court disagrees with this Court's decision, the bankruptcy court was bound to follow it.

This Court's holding that CWM had a property interest in the coal prevented the bankruptcy court from once again granting summary judgment because it makes clear that the Trustee is not limited to seeking *damages* for the post-petition removal of the Severed Coal, as the bankruptcy court suggests. Damages are awarded as a *remedy* in cases involving torts or breaches of contract, and such damages can generally be obtained only from a party to the contract or, in the case of a tort, a party to whom a legal duty was owed. This limitation does

8

not apply, however, to *property claims* under bankruptcy law.  Because this Court held that the CWM had a property interest in the Severed Coal, *any party*—including the Coal Purchasers—who received Severed Coal in which CWM had a property interest may be subject to turnover claims, fraudulent transfer claims, and other claims under the Bankruptcy Code.

Naturally, the Trustee does not seek to recover the entire value of the Severed Coal, but only the value of the property interest that this Court held the estate had.  The actual value of the Severed Coal may be as high as $63 million.  Because CWM did not have title to the Severed Coal, the Trustee is not entitled to this amount, and he does not seek it.  However, this Court noted that there is evidence in the record that "CWM expended over $14 million in preparing to extract the Severed Coal."  Although the Trustee is not limited to a breach-of-contract claim in this property-recovery case, contract-type damages may be a helpful measure of the value of the property interest that the estate had in the Severed Coal.  And it is crucial to keep in mind that this Court has already ruled that the estate had such a property interest.

Property has long been described in American jurisprudence as being a bundle of sticks.  In the current case, title to the coal is an important and valuable stick in the bundle (and there is no question that CWM did not possess this particular stick).  But title is not the only stick in the bundle of property rights recognized under section 541 of the Bankruptcy Code.  This Court has already so held.  This Court stated as plainly and unambiguously as is possible that "CWM held a property interest for purposes of § 541 in the coal in situ."

On remand, the bankruptcy court needed to determine the value of the incorporeal-hereditament stick that was transferred to the Coal Purchasers.  That particular stick belonged to the Debtor, and if the Debtor did not receive reasonably equivalent value for that particular stick,

9

then the Coal Purchasers have obligations under bankruptcy law to the estate. As stated above, the value of the estate's property interest in the Severed Coal may be approximately $14 million.

### III. THE BANKRUPTCY COURT ERRED IN RULING THAT ALL POTENTIAL REMEDIES FOR THE TRUSTEE ARE BARRED BY SECTION 550.

Section 550 of the Bankruptcy Code provides that a trustee "may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property." 11 U.S.C. § 550(a). Because the Chapter 7 Trustee was successful in setting aside the transfer of the Coal Mine to Hiawatha, the bankruptcy court ruled that the Chapter 7 Trustee elected his remedy and that he is not entitled to recover the value of the estate's property interest in the Severed Coal. But the Coal Mine and the Severed Coal are two separate things. Regaining possession of the Coal Mine did not compensate the estate for the property interest it held in the coal that was removed from the Coal Mine post-petition.

The bankruptcy court held that the Trustee "could have elected to leave the mine under Hiawatha's control and pursue his remedy for value, but elected the remedy of asset, not the value." (App. 496-97.) If left to stand, this order would put bankruptcy trustees in an impossible position. This Hobson's choice is not required by the law.

The ability to obtain the *value* of an asset (as opposed to the actual asset) under section 550 protects a trustee in instances in which an asset has been destroyed or in which its value has depreciated. Obviously, when dealing with the very same asset, a trustee is not entitled to recover both the asset and its value. For example, if a hotel were worth $5 million on the petition date, a trustee could not recover $5 million in cash and then still obtain title to the hotel as well. But getting the hotel back would in no way preclude a Trustee from obtaining separate assets such as furnishings and rents.

10

The disagreement between the Trustee and the bankruptcy court in this case seems to stem from the fact that the bankruptcy court views the estate's property interest in the Severed Coal as merely a contract right. But this is not what this Court held. The error in the bankruptcy court's analysis with respect to section 550 flows from the bankruptcy court's failure to accept this Court's ruling that the estate had a *property interest* in the Severed Coal and not just a contractual right to mine the coal. Thus, the coal and the mine are two separate things. The Trustee is not seeking a double recovery, and by regaining possession of the Coal Mine, he did not legally forego any rights provided to him under the Bankruptcy Code with respect to the Severed Coal, a separate asset in which CWM had a property interest.

## CONCLUSION

Because this Court has already determined that the bankruptcy estate had a property interest in the Severed Coal, the bankruptcy court erred in once again granting summary judgment against the Trustee. The bankruptcy court also erred that recovery of the Coal Mine precluded the Trustee from recovering the value of the estate's property interest in the Severed Coal, a separate asset.

Dated this 29th day of September, 2014.

RAY QUINNEY & NEBEKER P.C.

/s/ Brent D. Wride
Brent D. Wride
*Attorneys for the Trustee and Aquila*

**CERTIFICATE OF SERVICE**

     I hereby certify that the foregoing **BRIEF OF APPELLANTS** was electronically filed with the Clerk of the Court using the CM/ECF system on September 29, 2014, and therefore electronic notification was sent to all parties whose names appear on the electronic mail notification list for the Court.

                                                     /s/ Alexis Gruninger

1300286

## **STATEMENT OF RELATED CASES**

This case was previously on appeal to this Court. The caption of the case in this Court at the time of the first appeal was *Rushton v. Standard Indus*. (*In re C.W. Mining Co*.), Case No. 2:11-CV-840 TS.