IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| In re:<br>C.W. MINING COMPANY,<br>    Debtor | Bankruptcy Case No. 08-20105 |
| GARY E. JUBBER, Chapter 11 Trustee, and AQUILA, INC.,<br>    Appellants,<br>vs.<br>DEFENDANTS RE: HIAWATHA COAL PROCEEDS,<br>    Appellees. | MEMORANDUM DECISION<br>AND ORDER<br>ON BANKRUPTCY APPEAL<br><br>Case No. 2:14-CV-500-TC<br>(Adversary Proceeding No. 11-08001) |

This appeal arises from an adversary proceeding filed in bankruptcy court in connection with the involuntary bankruptcy of C.W. Mining Company, the former operator of the Bear Canyon coal mine in Utah. Chapter 11 Trustee Gary E. Jubber and creditor Aquila, Inc. (collectively, the Trustee) appeal the Bankruptcy Court's decision that the "Hiawatha Coal Proceeds" (described below) are not property of the bankruptcy estate. For the reasons set forth below, the Bankruptcy Court's decision is AFFIRMED.

**Standard of Review**

In reviewing the Bankruptcy Court's order, the court applies the same standard of review that governs review in other appellate cases. Troff v. State of Utah (In re Troff), 488 F.3d 1237, 1238-39 (10th Cir. 2007). The court applies the *de novo* standard of review to legal conclusions

and reviews factual findings for clear error. Miller v. Bill & Carolyn Ltd. P'ship (In re Baldwin), 593 F.3d 1155, 1159 (10th Cir. 2010). Here, there are no factual disputes and all of the issues on appeal are questions of law. Accordingly, the court reviews the appealed order *de novo*.

### Factual and Procedural Background[1]

C.W. Mining Company (CWM or Debtor) was the operator of the Bear Canyon coal mine, which is located on land owned by C.O.P. Coal Development Company (COP). CWM operated the mine under the Coal Operating Agreement it had with COP. That agreement gave CWM the exclusive right to mine the coal. According to that Agreement, title to the coal vested the instant the coal was severed from the seam in the Mine.

On January 8, 2008, Aquila, Inc. and other creditors filed an involuntary petition against CWM in the United States Bankruptcy Court for the District of Utah. A Chapter 7 trustee was appointed and later replaced with Chapter 11 Trustee Gary Jubber.[2]

After the bankruptcy petition was filed, CWM initially retained possession of the Mine. But in June 2008, CWM sold its assets in the Mine to Hiawatha Coal Company (Hiawatha). Through June 2009, Hiawatha mined more than one million tons of coal from the Mine (the "Severed Coal") and sold the coal to various entities (including Commonwealth Coal Services, Inc., the Intermountain Power Agency, Nevada Power Company, and the Tennessee Valley Authority) (the "Coal Purchasers") for an estimated $63 million (the "Hiawatha Coal Proceeds" or "Severed Coal Proceeds").

---

[1] For a more detailed background, please see the Bankruptcy Court's June 20, 2014 Findings of Fact and Conclusions of Law (Dkt. No. 21-2, Appellants' App. 469-98).

[2] Kenneth Rushton was the Chapter 7 Trustee.

In late 2008, the Trustee filed an adversary proceeding under Section 549 of the Bankruptcy Code asking the Bankruptcy Court to avoid CWM's post-petition transfer of the Mine to Hiawatha. Section 549 permits a trustee to avoid post-petition transfers to the extent that value was not given for the transfer. The Bankruptcy Court granted the request.

After the Bankruptcy Court set aside the transfer, the Trustee had to choose between one of two remedies under Section 550(a): (1) take back possession of the Mine, or (2) take the value of the Mine. The Trustee ultimately elected to take back the Mine (the Trustee's "election of remedies").

Then, in a separate adversary proceeding (out of which this appeal arises),[3] the Trustee sought to recover the Hiawatha Coal Proceeds from the Coal Purchasers and other parties related to CWM. The Trustee argued that CWM's exclusive right to extract the coal from the Mine—a right that was granted by the Operating Agreement and that existed at the date the petition was filed—gave it title to the Severed Coal and the Severed Coal Proceeds.

The Trustee asserted that the Severed Coal is part of the Estate under 11 U.S.C. § 541[4] because:

(a)  The Operating Agreement gave it a property interest in the Severed Coal;

(b)  [T]he Debtor and not Hiawatha held the DOGM [the Utah Division of Oil, Gas and Mining] permit during the period in question;

---

[3] The adversary proceeding is actually a series of related adversary proceedings consolidated by the Bankruptcy Court to address "issues related to the coal and proceeds of the coal mined by Hiawatha because the adversary proceedings involved the common question of whether the Severed Coal was property of the Estate." (June 20, 2014 Findings of Fact and Conclusions of Law ("2014 Order") at 12, Appellants' App. 480.)

[4] Section 541 defines the scope of the bankruptcy estate (i.e., all property interests that make up the bankruptcy estate), which is formed at the time the petition is filed.

(c) [T]he Debtor did significant preparation work in the mine to make longwall mining extraction possible;

(e) [T]he Bankruptcy Estate must pay federal royalties for the severed coal;

(f) [T]he Debtor's sale of the mine to Hiawatha was a violation of the automatic stay; and

(g) [F]or equitable reasons the Severed Coal should be found to be property of the Estate.

(June 29, 2011 Statement of Undisputed Facts and Conclusions of Law in Support of Order Granting Summary Judgment ("2011 Order") at 11, Appellants' App. 1116.)[5]

After considering cross-motions for summary judgment, the Bankruptcy Court found that the Trustee was not entitled to the Hiawatha Coal Proceeds. Specifically, the Bankruptcy Court held that although the Operating Agreement granted CWM the exclusive right to mine the coal, that property interest was intangible: an "incorporeal hereditament"[6] or "profit à prendre"[7] in the coal in situ. The court cited to Benton v. State of Utah, 709 P.2d 362 (Utah 1985).

> Under Benton, contractual provisions such as those contained in the 1997 Operating Agreement "[do] not transfer the land," but give the holder "an incorporeal hereditament, a right to quarry and take stone from the area involved. This stone [becomes] the property of [the lessees] only upon its actual severance. There can be no property in rock, and the title thereto cannot be divested or

---

[5] For the remainder of this order, the court will refer to the Appellants' Appendix as "App."

[6] See Black's Law Dictionary (10th ed. 2014) (an "incorporeal hereditament" is "an intangible right in land"); Black's Law Dictionary (6th ed. 1990) (an "incorporeal hereditament" is a property right "growing out of, or concerning or annexed to, a corporeal thing, but not the substance of the thing itself") (emphasis added).

[7] A "profit à prendre" is a contingent future right of possession which gives the owner "a right or privilege to go on another's land and take away something of value from its soil or from the products of its soil (as by mining, logging, or hunting)." Black's Law Dictionary (10th ed. 2014).

acquired until it has been taken from the earth."

(2011 Order at 10-11, App. 1115-16) (emphasis added) (quoting Benton, 709 P.2d at 366) (internal citation and quotation marks omitted).)  See also Ohio Oil Co. v. Sharp, 135 F.2d 303, 307 (10th Cir. 1943) ("[A]n incorporeal hereditament or a profit a prendre, absolute title to which does not vest until reduced to actual possession," is the exclusive right "to reduce to possession and thus acquire absolute title as personal property to the [minerals] found and obtained thereby.") (emphasis added).

The Bankruptcy Court reasoned that Hiawatha's mining (severing) of the coal did not, by virtue of CWM's intangible right under the Operating Agreement, transform CWM's contingent right of future possession into a tangible (corporeal) right to title in the Severed Coal.  (See 2011 Order, App. 1106-18).)  Simply put, CWM did not mine (sever) the coal and so the Severed Coal was never property of the Estate.

The Bankruptcy Court declined to address at any length the remaining arguments raised by the Trustee.  According to the Bankruptcy Court, the issues presented by the Trustee were "immaterial to the issue of the Debtor's and Estate's lack of title to the Severed Coal and Severed Coal Proceeds.  Under governing law, even if the Trustee's assertions are true, they do not effect a transfer of title to the coal in situ, the Severed Coal or its proceeds." (2011 Order at 12, App. 1117.)

The Trustee appealed that decision.  The District Court's order said it affirmed in part and reversed in part. (Mar. 25, 2013 Mem. Decision & Order on Combined Appeal ("Remand Order") at 3, App. 55.)  The District Court held that "the judgment of the bankruptcy court [i.e., the incorporeal hereditament finding] is AFFIRMED except as to its determination that CWM, at

the time of filing of the involuntary petition, held no property interest in the coal in situ for purpose of 541." (Remand Order at 15, App. 67.) Based on the finding that the Estate held an incorporeal hereditament for purposes of 11 U.S.C. § 541, the District Court remanded with instructions to address the Trustee's arguments (a) through (g) (as articulated above) and the Coal Purchasers' argument that the Trustee's choice to take the Mine (rather than its value) under 11 U.S.C. § 550 precluded collection of the Severed Coal Proceeds.

On remand, the Bankruptcy Court reviewed the arguments on the merits and came to the same conclusion: the Estate did not include the Severed Coal or the Severed Coal Proceeds. (June 20, 2014 Findings of Fact and Conclusions of Law ("2014 Order") at 25-26, App. 493-94.) The Trustee appealed the 2014 Order to this court (the current appeal).

## Issues On Appeal

The Trustee does not challenge the finding that the Estate had an incorporeal hereditament in the coal in situ at the time the petition was filed. Instead, the Trustee notes that the issue before the Bankruptcy Court and now this court is "[w]hether the bankruptcy estate had a property interest in coal that was taken from the Coal Mine <u>after</u> the bankruptcy petition was filed (the 'Severed Coal')." (Appellants' Br. (Dkt. No. 22) at 2 (emphasis added).)

Before discussing the three points on which the Trustee claims the Bankruptcy Court erred, the court must clarify an important issue. The Trustee repeatedly asserts throughout his brief that the District Court found that CWM had a property interest in the <u>Severed Coal</u>. (<u>See, e.g.</u>, Appellants' Br. at 8 (stating that the District Court, in the Remand Order, determined that "CWM had a property interest in the <u>Severed Coal</u>," and that such a holding "is binding and dispositive") (emphasis added). Nothing in the Remand Order supports the Trustee's conclusion.

6

The District Court limited its holding to property interest in the coal in situ. (See Remand Order at 15, App. 67 (holding that CWM had a "property interest for purposes of § 541 in the coal in situ") (emphasis added).) The coal in situ is not equivalent to the Severed Coal, and the language in the Remand Order and the 2014 Order simply does not support the unreasonable leap of logic the Trustee makes to argue his position.

That being said, the court now reviews the Trustee's assertion that the Bankruptcy Court erred in three ways.

### 1.  Interpretation of the District Court's Mandate

The Trustee contends that the Bankruptcy Court erred by holding that "[t]he District Court did not reverse any decision of this court." (Appellants' Br. at 1.) The court disagrees with the Trustee. In substance, the District Court did not directly reverse any holding by the Bankruptcy Court. It remanded for evaluation of the issues that had not been considered in any significant way (if at all) in light of the finding that the Estate held an incorporeal hereditament in the coal in situ under Section 541 of the Bankruptcy Code. The Bankruptcy Court did what the District Court asked it to do—re-examine the Trustee's arguments.

In the 2014 Order, the Bankruptcy Court fully addressed the Trustee's remaining arguments that the Trustee articulated in his original motion for summary judgment. (See 2014 Order at 24, App. 492-93.) The Bankruptcy Court properly held that the "Trustee's additional claims have no effect on the Debtor's property interest in the Severed Coal." (2014 Order at 21, App. 489.) For the very same reasons set forth in that portion of the 2014 Order, this court agrees that the Trustee's remaining arguments do not transform the Estate's contingent right of future possession into a tangible right of possession of the Severed Coal.

2. **"Contract Right" versus "Property Right"**

According to the Trustee, the Bankruptcy Court erred when, after the District Court in the Remand Order held that the Estate "had a property interest recognized by § 541," the Bankruptcy Court failed "to abide by this ruling and by holding that the estate's property interest was simply a <u>contract right</u> to mine coal." (Appellants' Br. at 1 (emphasis added).) The Trustee incorrectly interprets the Bankruptcy Court's order.

The Bankruptcy Court did not hold that the Estate's property interest was nothing more than a contract right to mine coal. Rather, the Bankruptcy Court discussed <u>property</u> interests and approached the analysis with the basic understanding that CWM's right to mine coal was a property interest in the form of an incorporeal hereditament.

The Bankruptcy Court's ruling was narrow and discrete. The Trustee sued for a declaration that the Estate had title to the Severed Coal and, consequently, the Severed Coal was property of the Estate. The Bankruptcy Court addressed just that question, and correctly determined, in light of the circumstances raised by the Trustee, that the Estate's contingent interest did not mature into the property right the Trustee claims.

3. **Preclusion Based on the Trustee's Election of Remedies**

Finally, the Trustee maintains that the Bankruptcy Court erred "in holding that because the Trustee recovered possession of the coal mine, he was precluded from recovering the value of the coal that was severed from the coal mine." (Appellants' Br. at 2.)

The Bankruptcy Court's conclusion that the Trustee is barred by Section 550 from recovering the Severed Coal Proceeds is sound. In the 2014 Order, the Bankruptcy Court held that, even if the Trustee's incorporeal hereditament somehow translated into a right to the

Severed Coal (a finding that the Bankruptcy Court correctly rejected), the Trustee elected his remedies under Section 550 and so is foreclosed from recovering the Severed Coal or the Coal Proceeds at this point.[8]

For the reasons articulated by the Bankruptcy Court in the 2014 Order, the court finds that the Bankruptcy Court's Section 550 Election of Remedies holding is correct as a matter of law.

## Conclusion

The Bankruptcy Court followed the mandate of the Remand Order, and its conclusion is correct. As a matter of law, the Severed Coal was not and is not property of the Estate. Accordingly, the Trustee is not entitled to the remedy he seeks in this appeal.

## ORDER

For the reasons set forth above, the decision of the bankruptcy court is AFFIRMED.

DATED this 1st day of October, 2015.

BY THE COURT:

*Tena Campbell*
TENA CAMPBELL
U.S. District Court Judge

---

[8]Contrary to the Trustee's assertion, the Bankruptcy Court did not rule that "<u>all</u> potential remedies for the Trustee are barred by Section 550." (Appellants' Br. at 10 (emphasis added).) Although the Trustee chose the asset remedy over the value remedy, the Bankruptcy Court expressly noted that the election of remedies did not foreclose the Trustee's separate claim for damages for Hiawatha's removal of the coal. (2014 Order at 11-12, App. 479-80.)